**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**ANNA BOWIE,**

     **Plaintiff,**

     **v.**                                                  **3:13-CV-0730**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

     **Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

Plaintiff Anna Bowie brought this suit under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying her applications for benefits is not supported by substantial evidence and is contrary to the applicable legal standards. The Commissioner argues that the decision is supported by substantial evidence and made in accordance with the correct legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings. For the reasons stated below, the Court will remand the case to the ALJ for a determination consistent with these findings.

1

**I.     PROCEDURAL HISTORY**

On December 23, 2008, Plaintiff protectively filed Title II and Title XVI applications, alleging disability since January 1, 2000. The claims were denied by initial determination dated April 27, 2009. Plaintiff filed a request for hearing and appeared via video teleconference before Administrative Law ("ALJ") Judge Elizabeth W. Koennecke on April 18, 2010. The ALJ was in Syracuse, while Plaintiff was in Binghamton.

On August 18, 2010, ALJ Koennecke issued a partly favorable decision. (See Social Security Administrative Record ("R."), dkt. # 8, at 46-57). The ALJ found that since July 1, 2001, Plaintiff had been unable to perform her past relevant work as a waitress. (Id. at 55). The ALJ also found that, as of August 4, 2010, Plaintiff was disabled within the meaning of the Social Security Act. (Id. at 56). She also concluded that there was good cause to reopen decisions denying DIB and SSI benefits to Plaintiff in June and October 2007. (Id. at 46-47). Plaintiff disagreed with the ALJ's finding that the onset date of the disability was August 2010 and filed a request for review with the Social Security Appeals Council. (Id. at 125-129). She contended that her disability began by August 2007. (Id. at 129). The Appeals Council vacated the ALJ's decision on December 14, 2011, remanding the case to obtain additional evidence on the Plaintiff's impairments from her medical records, obtain evidence from a medical expert on the onset, nature, severity and limiting effects of Plaintiff's impairments, further evaluate Plaintiff's subjective pain complaints, examine Plaintiff's residual functional capacity, and take evidence from a vocational expert. (Id. at 133-34).

On remand, the ALJ conducted an evidentiary hearing on June 5, 2012 in Binghamton, New York. (Id. at 19). The ALJ took evidence from a medical expert, Louis

Fuchs, MD, and a vocational expert, Linda N. Vause. (Id.). Armed with that additional evidence, the ALJ issued a decision on June 25, 2012 that concluded that Plaintiff had not been under a disability since January 1, 2000. (Id. at 20). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairment in the federal regulations. (Id. at 24-25). The ALJ also found that Plaintiff had a residual functional capacity to lift ten pounds continuously, twenty pounds frequently, and fifty pounds occasionally. (Id. at 25). She could carry twenty pounds continuously, sit for four hours at a time in an eight-hour day, and walk for one hour at a time for a total of four hours in each day. (Id.). Considering the Plaintiff's age, education, work experience and residual functional capacity, the ALJ concluded that Plaintiff was capable of performing work that exists in significant numbers in the national economy, which justified a finding of "non-disabled." (Id. at 32).

Plaintiff then filed a request for review of the hearing decision by the Appeals Council. The Council denied review, making ALJ Koennecke's June 25, 2012 Decision the final determination of the Commissioner. As indicated above, Plaintiff brings this action under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review the Commissioner's final decision.

## II. FACTS

The parties do not dispute the underlying facts of this case as set forth by Plaintiff in her memorandum of law. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III.     THE COMMISSIONER'S DECISION

The ALJ engaged in the required five-step analysis to determine whether a claimant qualifies for disability benefits. The ALJ first determined that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006. (Id. at 22). Next, the Commissioner found that Plaintiff had not engaged in substantial gainful activity since January 1, 2000, the alleged onset date of her disability. (Id.). Third, the Commissioner concluded that Plaintiff suffered from the severe impairment of degenerative disc disease of the lumbar spine and cervical spine, as defined in 20 CFR §§ 404.1520(c) and 416.920(c). Because no medical evidence of record existed to demonstrate that claimant suffered any physical or mental impairment prior to January 1, 2007, no disability could be found before that date. (Id.). Though Plaintiff had complained of episodes of acute headaches, the medical records indicated that the conditions resolved with treatment and were not frequent enough to be considered chronic. (Id. at 23). The headaches caused no more than "minimal" work-related limitations and did not qualify as severe under the Regulations. (Id.). Similarly, though the medical records indicated treatment for depression, the Commissioner found that Plaintiff had not established that this mental condition was severe. (Id.). No mental limitations were indicated because of this condition, and the records indicated that medication kept Plaintiff's depression well-controlled. (Id.). Plaintiff had not sought any mental health treatment, and had not been formally diagnosed with any mental condition. (Id. at 23-24). She demonstrated no limitations in any of the four functional areas the regulations use to determine the existence of a severe mental impairment. (Id. at 24).

Turning to the next step in the evaluation process, the ALJ concluded that Plaintiff

4

did not have an impairment or combination of impairments that met or medically exceeded the severity of one of the listed impairments. (Id.). The ALJ evaluated Plaintiff under Listing 1.04, which establishes the requirements for the listing of spine disorders. (Id. at 25). The ALJ determined that Plaintiff's neck and back impairments were severe, but the requirements for listing were not met because the medical records contained "no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis." (Id. at 25).

Next, the ALJ determined that Plaintiff had the residual functional capacity to lift ten pounds continuously, 20 pounds frequently, and 50 pounds occasionally. (Id.). She could carry 20 pounds continuously, sit for four hours at a time for a total of eight hours in an eight-hour day, stand for one hour at a time for a total of four hours in an eight-hour day, and walk for one hour at a time for a total of four hours in an eight-hour day. (Id.). The ALJ also concluded that Plaintiff did not require a cane to ambulate and was able to reach, handle, finger, feel, push and pull continuously, operate foot controls continuously, climb stairs or ramps, pull continuously, and balance continuously. (Id.). Plaintiff could also occasionally climb ladders or scaffolds, stoop, kneel, crouch and crawl. (Id.). She could tolerate continuous exposure to unprotected heights, moving mechanical parts, dust, odors, fumes, other pulmonary irritants, and extreme heat. (Id.). She could continuously operate a motor vehicle and had consistent ability to perform less than the full range of medium work as defined by the regulations. (Id.).

The ALJ reported that Plaintiff alleged she could not work due to "'blown discs' in her cervical spine and lower back, anxiety, depression, post-traumatic stress disorder, possible brain aneurism, and migraines." (Id.). Plaintiff claimed "severe pain, inability to concentrate, severe migraines, and pain with standing for long periods of time." (Id.).

5

Plaintiff asserted she stopped working in 2000 because of these conditions, and that her back pain and depression worsened in February 2009. (Id. at 25-26). Her back, Plaintiff claimed, made "going anywhere" difficult; she found it "impossible to do anything." (Id. at 26). While the ALJ found that Plaintiff's medically determinable impairments could have been reasonably expected to cause her alleged symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Id.). The Plaintiff did not "produce appropriate, probative evidence," and without such evidence, "controlling weight cannot be given to subjective complaints, no matter how intensely expressed." (Id.). The ALJ gave "little weight" to the testimony of Jesse Welch, Plaintiff's daughter and Brenda Tomlin, Plaintiff's sister, since that testimony was "inconsistent with the objective evidence of record" and both were "non-medical, sympathetic, interested parties." (Id.).

The ALJ also found that the record did not support Plaintiff's claims of mental impairments, since the record did not establish any "limitations stemming from any mental impairment." (Id.). Plaintiff had told a provider in January 2012 that she had not had difficulties in meeting home, work or social obligations. (Id.).

The ALJ likewise concluded that the record did not support Plaintiff's claims about the limitations caused by her back impairment. (Id.). The ALJ pointed to the medical records of Xiao Fang, MD, who had examined Plaintiff in February and March 2012, as well as other medical records that recorded only mild limitations due to the back condition. (Id. at 26-27). The ALJ also found that diagnostic images from CT scans, X-Rays and MRIs performed since 2007 failed to support Plaintiff's allegations. (Id. at 27-28). Such images instead "suggest[ed] that [Plaintiff] has a medically determinable neck and back

6

impariment that could reasonably be expected to cause her limitations, but not to the extent [she] allege[d]." (Id. at 28). Plaintiff's failure to engage in physical therapy, despite doctors' recommendations, also "suggest[ed] that her condition [was] not as debilitating as she allege[d]." (Id.).

The ALJ summarized opinion evidence supplied by John Giannone, MD and Brian Wood, MD. Dr. Giannone, who had treated Plaintiff, indicated in an August 4, 2010 opinion that she had moderate limitations in walking, sitting, standing, lifting, carrying, pushing, pulling and bending. (Id.). She could not work "reliably" because she could not remain in any position for more than 30 minutes. (Id.). Dr. Wood examined Plaintiff and provided a medical source statement that termed Plaintiff "significantly disabled and unable to perform her household chores." (Id.). The ALJ determined that Dr. Wood did not have a treating relationship with Plaintiff. (Id. at 29). Plaintiff disputes this. Dr. Wood found that Plaintiff could not engage in full-time work that required her to be on her feet or carrying things. (Id. at 28). A sedentary job was her only option. (Id.). Dr. Wood's statement found that Plaintiff could lift up to ten pounds occasionally, carry up to 20 pounds occasionally, sit for eight hours in an eight-hour day, stand for three hours at a time and three hours in an eight-hour day, and walk for one to two hours at a time for a total of three hours in an eight-hour day. (Id. at 28-29). He also found that she could frequently reach, handle, finger and feel, could occasionally operate foot controls, reach, push and pull, though she should never climb ladders or scaffolds, stoop, kneel, or crawl. (Id. at 29). Plaintiff could occasionally climb stairs, ramps, balance or crouch occasionally tolerate vibrations. (Id.). She could tolerate frequent exposure to humidity, wetness, dust, odors, fumes and other pulmonary irritants, extreme cold and extreme heat. (Id. 29).

7

Plaintiff should, Dr. Wood found, avoid any exposure to unprotected heights and moving mechanical parts. (Id.). She could occasionally operate a motor vehicle. (Id.).

The ALJ gave less evidentiary weight to Dr. Giannone's and Dr. Wood's opinions because, she found, the objective findings in physical examinations did not support their claims. (Id.). The MRIs and X-rays demonstrated only mild abnormalities and were insufficient to support the opinions the two doctors rendered. (Id.).

The ALJ also found only limited probative value in the opinion of George Sirotenko, a consultative engineer who examined Plaintiff in August 2007. (Id.). Sirontenko found moderate limitations in forward flexion, extension or rotation, which were supported by Dr. Sironetenko's "mild" findings on examination. (Id.). Since Dr. Sirontenko did not offer any findings on Plaintiff's ability to sit, stand, walk, push, pull or use her upper extremities and offered only vague limitations on bending and lifting, his opinion offered little aid to the ALJ. (Id.).

The ALJ found the opinions of Louis Fuchs, MD, an orthopedic surgeon who "reviewed the claimant's medical file at the request of the Administration and pursuant to the Remand Order," more useful. (Id.). Dr. Fuchs found that Plaintiff could lift ten pounds continuously, 20 pounds frequently, and 50 pounds occasionally. (Id.). He concluded that she could carry 20 pounds continuously, sit for four hours at a time for a total of eight hours in an eight-hour day, stand for an hour at a time for a total of four hours in an eight-hour day, and walk for an hour at a time for a total of four hours in an eight-hour day. (Id.). Plaintiff did not require a cane to ambulate, could reach, handle, finger, feel, push and pull continuously, operate foot controls continuously, and climb stairs or ramps, and balance continuously. (Id.). She could occasionally climb ladders or scaffolds, stoop, kneel,

8

crouch and crawl. (Id.). According to Dr. Fuchs, Plaintiff could tolerate continuous exposure to unprotected heights, moving mechanical parts, dust, odors, fumes and other pulmonary irritants, and extreme heat. (Id.). She could continuously operate a motor vehicle and was able to tolerate occasional exposure to humidity, wetness, extreme cold, and vibrations. (Id.). The ALJ gave Dr. Fuchs' opinion "great weight in determining the [Plaintiff's] residual functional capacity because this is an opinion from an acceptable medical source who specializes in orthopedic surgery, and because it is well supported by the objective evidence of record." (Id. at 30).

The ALJ next found the claimant capable of performing her past relevant work as a waitress. (Id.). The physical requirements of a waitress position, the ALJ found, did not exceed the residual functional capacity found for the Plaintiff. (Id.). The ALJ also found that, although the Plaintiff could perform past relevant work, there were also jobs existing in the national economy that she could perform. (Id.). Claimant was 47 years old, defined as a "younger individual" by the regulations. (Id. at 31). She had at least a high school education and could communication in English. (Id.). Whether or not her skills as a waitress were transferrable, the ALJ found that the regulations permitted a finding of not disabled. (Id.). Considering Plaintiff's residual functional capacity, the ALJ found that she could perform less than the full range of medium work. (Id.). With these limitations, and given the Plaintiff's age, education and work experience, the vocational expert found that Plaintiff could perform her past relevant work as a waitress. (Id. at 31-32).

The ALJ also posed a second hypothetical to the vocational expert. (Id. at 32). The ALJ proposed that the Plaintiff be limited to lifting 10 pounds occasionally, carrying 20 pounds occasionally, sitting for six hours in an eight-hour day, standing for three hours in

9

an eight-hour day, and walking for three hours in an eight-hour day.  (Id.).  She also proposed  the additional limitations of only occasional pulling, overhead reaching, operating foot controls, stair or ramp climbing, balancing, crouching, and occasional operation of a motor vehicle.  Finally, she sketched out limitations of frequent exposure to heat, wetness, and temperature extremes.  (Id.).  The vocational expert found that Plaintiff would be able to perform the requirements of occupations such as food and beverage order clerk, telephone quotation clerk, and final assembler.  (Id.).  Such positions, the expert found, are classified as sedentary jobs with specific vocational preparations of two, which is classified as unskilled.  (Id.).  The vocational expert testified to the numbers of such jobs in the national, regional and local economies.  (Id.).

Based on this testimony, the ALJ found that "considering the [Plaintiff's] age, education, work experience, and residual functional capacity" she was "capable of making a successful adjustment to other work that exists in signficant numbers in the national economy."  (Id.).  A finding of "not disabled" was therefore appropriate under the Social Security Regulations.  (Id.).

## IV. STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g).  First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second,

the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See *Tejada*, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). However, although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

## V. DISCUSSION

The Plaintiff offers several grounds for challenging the conclusions of the ALJ, including an improper evaluation of the evidence provided by treating physicians, an improper assessment of whether Plaintiff met the criteria for Listing 1.04A, improper weight given to the opinions of Dr. Fuchs, an improper evaluation of Plaintiff's residual functional capacity, and a failure to consider depression from which the Plaintiff suffered. Because the ALJ erred in evaluating the medical evidence and the opinion of Dr. Fuchs, an error which requires remand and which could lead to a different outcome at step three of the evaluation process, the Court will address only that issue.

### A. Commissioner's Evaluation of the Medical Evidence

At issue here are largely MRI reports from 2009 and 2012, which Plaintiff contends undermine Dr. Fuchs' findings and provide support for the conclusions of the other physicians who treated and/or examined her. An MRI on July 25, 2009 revealed a mild interval increase in the size of the left paracentral disc protrusion at the L5-S1 level which is contacting and perhaps minimally compressing the left S1 nerve root. (R. at 398). In addition, there existed an unchanged central/right paracentral protrusion at the L4-L5 level causing no definitive nerve root compression. (Id.). The exam also revealed a new small central disc herniation at the L2-L3 level which was not causing any definitive nerve root compression. (Id.). Plaintiff underwent an MRI on January 12, 2012. (R. at 575-579). The later exam showed a disc bulge at T12-L1, resulting in mild ventral canal narrowing and mild facet hypertrophy. (R. at 575). At L2-L3, the MRI showed a disc bulge resulting in mild ventral canal narrowing and "mild bilateral neural foraminal narrowing as before."

12

(Id.). A "[t]iny central disc protrusion" remained "unchanged." (Id.). The exam also revealed a small right paracentral disc protrusion at L3-L4. (Id.). This protrusion had "developed compared to the prior study." (Id.). L3-L4 also showed mild narrowing of the right lateral recess and mild right neural foraminal narrowing. (Id.). The exam "reidentified" a small right paracentral disc protrusion and annular fissure and moderate narrowing of the right lateral recess with contact of the right L5 nerve root at L4-L5. The study also found mild left lateral recess narrowing. (Id.). Likewise, at L5-S1, the study "reidentified" a disc bulge and small left paracentral disc protrusion, as well as moderate narrowing of the left lateral recess with contact of traversing left S1 nerve root. (Id.). A mild bilateral neural foraminal narrowing remained unchanged, and degenerative endplate changes were "reidentified." (Id.). As a general impression, the study found that "[m]ultilevel degenerative changes and disc disease are reidentified." (Id.). The study found, however that a "[s]mall L4 right paracentral disc protrusion has developed compared to the prior MRI of July 25, 2009." (Id. at 575-76). Thus, the later MRI appears to have discovered additional injuries compared to the 2009 finding.

Plaintiff argues that the ALJ erred by giving great weight to the opinion of Dr. Fuchs, who did not examine Plaintiff but relied only on the medical record, particularly because Dr. Fuchs did not have the 2012 MRI when he offered his opinion. Instead, the Plaintiff argues, the ALJ should have given controlling weight to the opinions of the Plaintiff's treating physicians. The ALJ gave Dr. Fuchs' opinion "great weight in determining the [Plaintiff's] residual functional capacity because this is an opinion from an acceptable medical source who specializes in orthopedic surgery, and because it is well supported by the objective evidence of record." (R. at 30). Dr. Fuchs did not examine the claimant, but

13

reviewed her medical file containing the documented findings of multiple physical examinations without the 2012 MRI. (Id.).

The ALJ determined that the 2012 MRI and an X-Ray taken during that period were not material to the conclusions that Dr. Fuchs offered. According to the ALJ, these additional studies, "do not show significant changes in [Plaintiff's] condition and, consequently, there is no reason to suspect that these would alter [Dr. Fuchs'] opinion in any way." (Id.). Thus, "the above residual functional capacity assessment is supported [by] Dr. Fuch's [sic] medical opinion, the objective evidence reflected in the diagnostic images of record, and the findings upon physical examination." (Id. at 31). In other words, after admitting that Dr. Fuchs did not have all of the relevant medical evidence, the ALJ attempted to predict how he would evaluate medical evidence he did not have, concluding that he would have come to the same conclusions about Plaintiff's condition if he had those reports.

The ALJ's evaluation of those reports is clear error requiring remand. Courts have cautioned that "'the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion . . . While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, [s]he is not free to set [her] own expertise against that of a physician who [submitted an opinion to or] testified before [her]." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ may not substitute "her own lay opinion in place of medical testimony." Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013). The ALJ made precisely that error here. Even though new evidence existed which could potentially have altered Dr. Fuchs' analysis, the ALJ did not permit him to examine that evidence. Instead, the ALJ simply determined that

14

the medical evidence could not alter Dr. Fuchs' opinion. She substituted her lay opinion of the medical evidence for that of a trained medical professional.

Such error is especially egregious because the ALJ gave more credibility to Dr. Fuchs' opinion than to those of other physicians who had treated and/or examined Plaintiff and came to different conclusions. Normally, an ALJ is required to find a treating physician's opinion to be controlling when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2). "On the other hand, in situations where 'the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight." Pena ex rel. E.R. v. Astrue, 2013 WL 1210932, at *15 (E.D.N.Y. March 25, 2013) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). The ALJ here determined that substantial evidence existed to privilege Dr. Fuchs' opinion, but the ALJ did not ensure that all of the medical evidence was in front of the doctor whose opinion the ALJ concluded held the most weight.

The case must therefore be remanded to the ALJ for reconsideration. The ALJ should reconsider the weight given to the physicians' testimony in light of the evidence in front of them. The opinion of any consulting physician should not be given controlling weight unless all of the relevant medical records have been examined by the physician.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion on the pleadings is **GRANTED** in part, Defendant's motion on the pleadings is **DENIED**, and the Court **REMANDS** the case to the Commissioner for reconsideration in light of this opinion.

**IT IS SO ORDERED.**

Dated: March 9, 2015

_____
Thomas J. McAvoy
Senior, U.S. District Judge